

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **STEVEN CROSS,** | ) | **Docket No. 2018-06-0104** |
| **Employee,** | ) | |
| **v.** | ) | |
| **CABINET EXPRESS, LLC,** | ) | **State File No. 90526-2017** |
| **Employer,** | ) | |
| **And** | ) | |
| **SUMMIT INSURANCE COMPANY,** | ) | **Judge Joshua Davis Baker** |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

This case came before the Court on May 15, 2018, for an expedited hearing. The present focus of this case is Mr. Cross' entitlement to medical benefits.[1] Cabinet Express argued that his injury did not arise out of and in the course and scope of his employment.[2] The Court finds Mr. Cross would likely prevail at a hearing on the merits in proving his injury arose primarily out of and in the course and scope of his employment and orders Cabinet Express to provide him medical benefits.

### History of Claim

The case concerns the breadth of an employee's work responsibilities. On November 21, 2017, Mr. Cross suffered an injury when a large slab of granite fell on him. Mr. Cross testified the incident occurred "first thing in the morning" shortly after he clocked in. At the time of the injury, Mr. Cross' work assignment was to make a delivery.

---

[1] Mr. Cross waived the issue of temporary disability benefits at this expedited hearing.

[2] Cabinet Express also raised the affirmative defenses of intoxication and failure to follow a safety rule in the dispute certification notice but waived these defenses at the expedited hearing.

1

Before making the delivery, Mr. Cross took a cardboard template to the draftsman at Cabinet Express and informed the drafter he wanted granite cut from the template for use in a job he was doing on the side. Mr. Cross then went into the remnant yard, an unfenced area on Cabinet Express' property where it stores pieces of granite leftover after custom cutting larger pieces. According to Ben Ruppert, the operations manager, Cabinet Express disposes of any granite in the remnant yard that goes unsold.

The remnant yard sits next to the area where the Cabinet Express parks its delivery trucks. Mr. Cross went into the field to search for a piece of granite for use in the side job. As he looked through the pieces searching for the correct color, a slab of granite fell on Mr. Cross, breaking his leg. The first report of injury stated, "The IW was alone in an unauthorized area while he was taking a slab off the A frame but the slab fell onto his right thigh causing a fracture."

While Cabinet Express initially provided Mr. Cross a panel of physicians, it denied the claim nine days later. Mr. Cross sought medical care with Dr. John Tullos.

Cabinet Express cited Mr. Cross' alleged deviation from his employment duties as the reason for denying the claim. Under this theory, much of the testimony concerned the reason for Mr. Cross' presence in the remnant yard that morning. Mr. Ruppert testified that none of Mr. Cross work duties as an installer or delivery driver at Cabinet Express required, or allowed, him to go into the granite remnant yard because the yard "has no relevance to [Mr. Cross'] job." Another Cabinet Express employee, Ryan Griggs, however, stated that he had gone into the remnant yard to search for granite.

Mr. Ruppert additionally testified that Cabinet Express allows its employees to perform work on the side so that they can make extra money. The employee may bring a template of the necessary granite to Cabinet Express, and Cabinet Express will measure the template and give the employee the granite at essentially wholesale price. Mr. Ruppert said that employees do this type of work about five to ten times per year. He further stated, however, that employees usually receive his approval before doing work on the side. Mr. Ruppert said he first heard about the job after Mr. Cross' injury. According to Mr. Ruppert, Mr. Cross told him he was in the remnant yard "looking for a piece [of granite] for a friend for a side job."

Mr. Cross denied he was looking for granite for a "friend," but he admitted he was searching for a piece to use in a job he intended to complete with Ryan Griggs, another Cabinet Express employee. Mr. Griggs testified that Mr. Cross approached him about doing work on the side several days before the accident. Mr. Griggs had done "side jobs" in the past, and he had purchased granite for friends from Cabinet Express about five times in a six-year period.

2

Mr. Cross testified that many people know what he does for a living, and those people sometimes approach him seeking granite at a lower price, as Cabinet Express allows its employees to purchase granite for wholesale prices. Mr. Cross said if he finds the type of granite someone wants in the remnant yard, they will buy that granite from Cabinet Express. Mr. Griggs said he also went into the remnant yard to search for pieces of granite. After the accident, Mr. Cross and Mr. Griggs never completed the side job.

**Findings of Fact and Conclusions of Law**

Mr. Cross need not prove every element of his claim by a preponderance of the evidence to obtain relief at an expedited hearing. Instead, he must present sufficient evidence that he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). The Court finds Mr. Cross would likely prevail at a hearing on the merits.

In order for Mr. Cross to be eligible for benefits, he must have suffered an injury, as defined by the Workers' Compensation Law. Under the Workers' Compensation Law, an "injury" means "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement, or the need for medical treatment of the employee[.]" "An injury arises primarily out of and in the course and scope of employment only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(14). The analysis turns on "whether the employee's work activities more likely than not caused the accident," and "the . . . phrase arises primarily out of and in the course and scope of employment is satisfied if the trial court determines . . . by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." *Navyac v. Universal Health Serv's*, 2016 TN Workers' Comp. App. Bd. LEXIS 17, *12-13 (Mar. 31, 2016) (Internal quotations omitted).

Although the finding referenced above satisfies the statutory requirement, some of the terms within the definition require explanation for completeness. "An injury occurs in the course of employment if 'it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto.'" *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 534 (Tenn. 2006). Arising primarily out of employment refers to causation. An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Put another way, an injury arises out of employment when it "has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.,* 833 S.W.2d 496, 498 (Tenn.

3

1992).  Additionally, "compensation should not be permitted unless the employee acts in some way for the benefit of or in furtherance of the interests of his employer, or pursuant to instructions given by the employer." *Lennon v. Ridge*, 412 S.W.2d 638, 644 (Tenn. 1967).

Additionally, "the mere presence of the employee at the place of injury because of the employment is not enough, as the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work." *Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *19 (Nov. 9, 2015).  Accordingly, "an injury purely coincidental, or contemporaneous, or collateral with the employment . . . will not cause the injury . . . to be considered as arising out of the employment." *Id.*

Mr. Cross suffered his injury while on the clock, on Cabinet Express' premises, and in area where he might reasonably have been.  While Cabinet Express' counsel stated repeatedly that Mr. Cross should not have been in the remnant yard, Cabinet Express presented no evidence showing that Mr. Cross was forbidden from entering the yard.  Further, another employee, Mr. Griggs, testified he went into the remnant yard to search for granite.

The unfenced remnant yard was located next to the area where Cabinet Express parked delivery trucks.  That morning, Mr. Cross' job duties required him to make a delivery.  His passage into the remnant yard to look for granite for use in work on the side—work that Cabinet Express allows its employees to do—did not, in this Court's opinion, take him outside the course and scope of his employment.  Further, the Court holds the injury also arose out Mr. Cross' employment because Cabinet Express allows its employees to work on the side and ultimately benefits through the sale of granite that would otherwise be discarded if left unsold.

Tennessee law requires an employer to provide an injured employee medical and surgical treatment "made reasonably necessary" by a workplace accident at no cost to the employee.  This process generally begins with the employer giving the employee a list of three "independent reputable physicians" so that the employee may choose one to be the treating physician." *See* Tenn. Code Ann. § 50-6-204(a)(3)(A).  If an employer fails to provide a three-physician panel, it risks having to pay for all reasonable and necessary medical expenses incurred by an employee through treatment with an unauthorized physician.  *See Lindsey v. Strohs Cos., Inc.*, 830 S.W.2d 899, 902-3 (Tenn. 1992); *McCreary v. Yasuda Fire & Marine Ins. Co. of Amer.*, No. 01S01-9507-CH-00106, 1996 Tenn. LEXIS 102, at *5-6 (Tenn. Workers' Comp. Panel Feb. 20, 1996).

Cabinet Express denied this claim without providing Mr. Cross a panel.  Mr. Cross sought and received treatment from Dr. John Tullos for the injury.  He asked that the Court name him as the authorized treating physician.  The Court grants this request.

**IT IS, THEREFORE, ORDERED** as follows:

1. Cabinet Express shall provide Mr. Cross reasonable and necessary medical care with Dr. John Tullos to serve as the authorized treating physician. Dr. Tullos or Mr. Cross shall provide Cabinet Express with any bills for treatment.

2. This matter is set for a Scheduling Hearing on Monday, July 23, 2018, at 10:00 a.m. (CDT). **You must call 615-741-2113 or toll-free at 855-874-0474 to participate in the Hearing. Failure to call in may result in a determination of the issues without your further participation.**

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED ON MAY 25, 2018.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

5

**APPENDIX**

Exhibits:
1. Rule 72 Declaration of Steven Cross\
2. Medical Records
3. Photograph
4. Time Sheets

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Cabinet Express' Response to Request for Expedited Hearing

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on May 25, 2018.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Zachary Wiley | | | X | zwiley@forthepeople.com |
| Chad Jackson | | | X | cjackson@morganakins.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



**Filed Date Stamp Here**

## EXPEDITED HEARING NOTICE OF APPEAL
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

**RFA #:** _____

**Date of Injury:** _____

**SSN:** _____

_____

**Employee**

_____

**Employer and Carrier**

### Notice
Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

### Statement of the Issues
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

### Additional Information
**Type of Case** [Check the most appropriate item]

☐ Temporary disability benefits
☐ Medical benefits for current injury
☐ Medical benefits under prior order issued by the Court

### List of Parties
**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*** Attach an additional sheet for each additional Appellant ***

Employee Name: _____ SF#: _____ DOI: _____

**Appellee(s)**

**Appellee (Opposing Party):** _____ At Hearing: ☐Employer ☐Employee

Appellee's Address: _____ ___

Appellee's Phone: _____ Email: _____ _____

Attorney's Name: _____ BPR#: _____ _

Attorney's Address: _____ Phone: _____ _

Attorney's City, State & Zip code: _____

Attorney's Email: _____ _

*\* Attach an additional sheet for each additional Appellee \**

**CERTIFICATE OF SERVICE**

I, _____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20__.

[Signature of appellant or attorney for appellant]  _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____     Relationship: _____

_____     Relationship: _____

_____     Relationship: _____

_____     Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | | |
|---|---|---|---|---|
| AFDC | $ _____ | per month | beginning | _____ |
| SSI | $ _____ | per month | beginning | _____ |
| Retirement | $ _____ | per month | beginning | _____ |
| Disability | $ _____ | per month | beginning | _____ |
| Unemployment | $ _____ | per month | beginning | _____ |
| Worker's Comp. | $ _____ | per month | beginning | _____ |
| Other | $ _____ | per month | beginning | _____ |

LB-1108 (REV 11/15)                                                            RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries     $ _____ per month    Telephone    $ _____ per month

Electricity    $ _____ per month    School Supplies $ _____ per month

Water    $ _____ per month    Clothing    $ _____ per month

Gas    $ _____ per month    Child Care    $ _____ per month

Transportation  $ _____ per month    Child Support   $ _____ per month

Car    $_____ per month

Other    $ _____ per month (describe: _____ )

10. Assets:

Automobile    $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House    $ _____    (FMV) _____

Other    $ _____    Describe:_____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*